IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18-CV-81276-ROSENBERG/REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| DANIELA DADURIAN, | ) ) |
| Defendant. | ) ) |

**UNITED STATES' OPPOSITION TO
<u>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

This is a civil action by the United States to recover civil penalties assessed against Daniela Dadurian for willfully failing to disclose her interest in and authority over foreign bank accounts for the 2007 through 2010 tax years. All United States citizens are required to annually report their interest in or authority over foreign bank accounts to the Internal Revenue Service on a form commonly referred to as an FBAR. A citizen who willfully fails to report a foreign bank account in excess of $10,000 is liable for a civil penalty not to exceed 50 percent of the account balance. In this instance, the complaint alleges that for years 2007 through 2010 Dadurian willfully failed to report the foreign accounts over which she had authority in the British Virgin Islands, Germany, and Switzerland, and that penalties were properly assessed against her.

Dadurian admits that she had sufficient authority over each of the foreign bank accounts at issue in this action to require her to file an FBAR for each of the years from 2007 through 2010. She also admits that she did not timely do so. In moving for partial summary judgment,

1

Dadurian makes two arguments. First, she claims that she did not know of or have reason to know of the existence of the foreign accounts in 2007, and that her failure to file was not willful for this reason. Second, she asserts a reasonable cause defense with respect to tax year 2010 on the ground that she relied on the advice of counsel in not filing the FBAR.

Both arguments are meritless. First, a dispute of fact exists. In this regard, there is evidence to support a finding that Dadurian knew of the existence of the foreign accounts prior to the date that the first FBAR was due to have been filed for tax year 2007. Second, 31 U.S.C. § 5321(5)(C)(ii) expressly precludes a reasonable cause defense in a willful FBAR case. For this reason, Dadurian's reasonable cause defense fails as a matter of law. Even if reasonable cause were a valid defense to a willful violation, a dispute of fact exists as to whether or not Daniela was advised to file an FBAR.

Accordingly, the United States requests that defendant's motion for summary judgment be denied.

In support of this opposition, the United States relies on the contemporaneously filed Statement of Material Facts ("Facts"). In addition, the United States relies on exhibits, which are attached to the Statement of Material Facts.

## SUMMARY JUDGMENT STANDARD AND STANDARD OF REVIEW

Summary judgment is proper if evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2

The nonmoving party may not rest on mere allegations to overcome a properly supported motion for summary judgment.  Fed R. Civ. P. 56(e); *see also Moses v. American Nonwovens, Inc*., 97 F.3d 446, 447 (11th Cir. 1996); *cert. denied*, 519 U.S. 1118 (1997).  Moreover, the courts will not entertain immaterial or insubstantial doubts as to material facts to defeat a summary judgment motion.  *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).  Rather, an opposing party must come forward with evidence that is "significantly probative," in the sense that it creates an issue which may not be resolved until the trier of fact has the opportunity to assess the credibility of the witnesses.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  At the same time, all inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party.  *Mize v. Jefferson City Board of Education*, 93 F.3d 739, 742-743 (11th Cir. 1996.)

A district court determines *de novo* whether a defendant is liable for the penalty arising from a taxpayer's failure to meet the reporting requirements applicable to foreign accounts.  As such, this Court should render its liability determination based on the merits of the evidence presented in this action.  *United States v. Williams*, 2010 WL 34773311, at *1 (E.D. Va. 2010), *rev'd on other grounds*, 489 Fed. Appx 655 (4th Cir. 2012); *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012); *Bedrosian v. United States*, No. 15-5853, 2017 WL 4946433, at *2 (E.D. Pa. Sept. 20, 2017).

Because the pertinent statute gives the Secretary of the Treasury discretion as to the amount of the penalty, this Court should review the assessment to determine whether the penalty's amount is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 U.S.C.§ 706(2)(A); s*ee also United States v. Williams (Williams III)*, No. 1:09-cv-437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014).

## BACKGROUND

**I.      The Foreign Bank Account Reporting Requirement**

Citizens of the United States such as Dadurian are subject to taxes on their income, regardless of where it is earned. 26 U.S.C. § 61(a); 26 C.F.R. § 1.1-1(b).  The Currency and Foreign Transactions Reporting Act, also known as the Bank Secrecy Act ("BSA"), was enacted to ensure that citizens meet the requirement to pay taxes on income earned abroad and "to detect and prosecute criminal activity." *See* Pub. L. 91-508, 84 Stat. 1114 (1970) (31 U.S.C. §§ 5311 *et seq.*); *see also* H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4395, 4397 (stating that the BSA was enacted to deal with major issues in law enforcement, one of which was the use of secret foreign bank accounts to evade income taxes); *United States v. Simonelli*, 614 F.Supp.2d 241 (D. Conn. 2008), *quoting*, 31 U.S.C. § 5311. Congress recognized that citizens' use of undisclosed foreign financial accounts caused significant federal tax losses as well as a gaping disparity in the enforcement of the internal revenue laws. 1970 U.S.C.C.A.N. at 4397–98 (observing that "[s]ecret foreign financial facilities" offered the wealthy a "grossly unfair" but "convenient avenue of tax evasion").

To fill the information gap, the BSA instructs the Secretary of the Treasury to require U.S. citizens "to keep records, file reports," or both, when the citizen "makes a transaction or maintains a relation . . . with a foreign financial agency." 31 U.S.C. § 5314(a). Pursuant to that statute, the Secretary published regulations requiring any citizen "having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign

country" to report certain details about the account to the Treasury Department. 31 C.F.R. § 1010.350(a).[1] The report must be made each year by filing a Form TD F 90–22.1, Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR." *See* 31 C.F.R. § 1010.306(c).  An FBAR must be filed with the Treasury Department no later than June 30 "with respect to foreign financial accounts exceeding $10,000 maintained during the previous . . . year." *See id.*

To alert citizens to the filing requirement, Schedule B of each year's Form 1040 contains the following check-the-box question:

| Part III Foreign Accounts and Trusts (See page B-2.) | You must complete this part if you (a) had over $1,500 of taxable interest or ordinary dividends; or (b) had a foreign account; or (c) received a distribution from, or were a grantor of, or a transferor to, a foreign trust. | Yes | No |
|---|---|---|---|
| | 7a At any time during 2007, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and filing requirements for Form TD F 90-22.1. . . . . . . . | | |
| | b If "Yes," enter the name of the foreign country ▶ ............................................................... | | |
| | 8 During 2007, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If "Yes," you may have to file Form 3520. See page B-2 . . . . . . . . . | | |
| For Paperwork Reduction Act Notice, see Form 1040 instructions. | | Schedule B (Form 1040) 2007 | |

*See, e.g.*, Dadurian's 2007 IRS Form 1040 Income Tax Return, at Ex. 16 (Schedule B).  The instructions for Schedule B require "Yes" to be checked on line 7a if the filer had authority to sign or direct the use of a foreign account.  *Id.*  Schedule B further refers taxpayers to Form TD F 90–22.1, that is, the FBAR, which provides specific instructions for reporting a financial interest in or authority over bank accounts, securities accounts, or other financial accounts in a foreign country.  *Id.*; *see* Ex. 3, *TD-F 90-22.1, Report of Foreign Bank and Financial Accounts, Rev.*

---

[1] Treasury Regulations applicable to FBAR penalties were contained in the Code of Federal Regulations Title 31, part 103, until 2010 when they were moved to Title 31, Part 1010.  *See* 31 C.F.R. § 1010.350(a); 31 C.F.R. § 1010.306(c).  For convenience, the most recent location of these regulations is cited.

*Oct. 2008 with Instructions*, SEC.gov, https://www.sec.gov/about/offices/ocie/aml/f90221.pdf; *McBride*, 908 F. Supp. 2d at 1200 n.2.

## II.     The Civil Penalty for Willful Failure to Report a Foreign Bank Account

The Secretary of the Treasury is authorized to impose a civil penalty on any person who does not comply with the requirement to report a foreign bank account. 31 U.S.C. § 5321(a)(5). Where the failure is "willful," the amount of this penalty cannot exceed the greater of $100,000 or 50 percent of the balance of the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)(i); 31 U.S.C. § 5321(a)(5)(D). There is no reasonable cause exception for a willful violation. 31 U.S.C. § 5321(a)(5)(C)(ii).

A person is subject to the willful failure to file an FBAR penalty under § 5321(a)(5) if the following four elements are met:

1. The person is a United States citizen;
2. The person had an interest in or authority over a foreign financial account;
3. The financial account had a balance that exceeded $10,000 at some point during the reporting period; and
4. The person willfully failed to disclose the account and file an FBAR form for the account.

*United States v. Pomerantz*, No. C16-689, 2017 WL 4418572, at *2-3 (W.D. Wash. Oct. 5, 2017); *United States v. Toth*, 2017 WL 1703936, at *4 (D. Mass. May 2, 2017); *McBride*, 908 F. Supp. 2d at 1201; *Bedrosian*, 2017 WL 1361535, at *3.

### III.     The Assessments

The Internal Revenue Service assessed $2,396,872 in penalties against Dadurian for her willful failure to meet her foreign account reporting obligations for 2007, 2008, 2009, and 2010. (Facts ¶ 81.)   The penalties involved bank accounts Dadurian had authority over in Switzerland, Liechtenstein, British Virgin Islands, and Germany.

### IV.     The Foreign Financial Accounts

In 2007, the foreign accounts over which Dadurian excercised authority are set forth in the table below:   (Facts ¶ 8.)

| Bank Name | Account Owner | Maximum Balance During Year in U.S. Dollars |
|---|---|---|
| VP Bank (BVI) | Ayaba | $2,514,558.45 |
| VP Bank (BVI) | Shoremont | $2,096,518.63 |
| Frankfurter Bank | Daniela Dadurian | $356,875.60 |
| VP Bank | Stiftung Lionette | $294,616.13 |
| Sparkasse Bodensee | Georgeta Dadurian | $31,957.35 |

In 2008, the foreign accounts over which Dadurian excercised authority are set forth in the table below:  (Facts ¶ 9.)

| Bank Name | Account Owner | Maximum Balance During Year in U.S. Dollars |
|---|---|---|
| VP Bank (BVI) | Ayaba | $1,388,118.86 |
| VP Bank | Stiftung Lionette | $366,400.73 |
| Sparkasse Bodensee | Georgeta Dadurian | $20,333.34 |

7

In 2009, the foreign accounts over which Dadurian excercised authority are set forth in the table below:  (Facts ¶ 10.)

| Bank Name | Account Owner | Maximum Balance During Year in U.S. Dollars |
|---|---|---|
| Rahn & Bodmer | Ayaba | $1,317,936.00 |
| VP Bank (BVI) | Ayaba | $1,213,990.96 |
| Sparkasse Bodensee | Georgeta Dadurian | $18,000.00 |

In 2010, the foreign accounts over which Dadurian excercised authority are set forth in the table below:  (Facts ¶ 11.)

| Bank Name | Account Owner | Maximum Balance During Year in U.S. Dollars |
|---|---|---|
| Rahn & Bodmer | Ayaba | $1,384,186.00 |
| Sparkasse Bodensee | Georgeta Dadurian | $13,029.12 |

Dadurian admits that she was required to report her interest in and authority over the foreign accounts to the Internal Revenue Service. *See* 31 U.S.C. § 5314.  (Facts ¶ 77.)  She did not file FBARs until after the IRS discovered the foreign financial accounts.  (Facts ¶¶ 66 and 68.)

## ARGUMENT

### I.  The Legal Standard for Willfulness

Section 5321 authorizes a penalty for willful violations of the reporting requirement, but fails to define the term "willful." 31 U.S.C. § 5321.  In civil cases, willfulness includes both knowing and reckless violations of a standard. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007) (explaining that this definition is consistent with common law usage of the term, which treated reckless disregard of the law as a willful violation).  The term willfulness includes all conduct that is voluntary, but not conduct that is merely accidental or unconscious. *McBride*,

908 F.Supp.2d at 1205; *United States v. Garrity*, 304 F. Supp. 3d 267, 274 (D. Conn. 2018); *United States v. Bohanec*, 263 F.Supp. 3d 881, 888 (C.D. Cal. 2016); *Bedrosian*, 2017 WL 4946433, at *4.

Reckless disregard of a statutory duty satisfies the willfulness standard. *McBride*, 908 F.Supp.2d at 1204; *Bedrosian*, 2017 WL 4946433, at *4. Recklessness is evaluated using an objective standard that evaluates whether an action entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Bedrosian*, 2017 WL 4946433, at *4 (quoting *Safeco Ins. Co.*, 551 U.S. at 68). The relevant inquiry is whether the failure to disclose the information was purposeful instead of inadvertent, not whether the taxpayer subjectively believed he was not required to file an FBAR.  *See Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (finding that after it is established that a failure to disclose information was done purposefully, whether the filer believed he was legally justified in withholding the information is irrelevant); *McBride*, 908 F.Supp.2d at 1210 (finding that if subjective intent were required, every person would be able to escape liability by avoiding learning of the reporting requirements).

Acting with "'willful blindness' to the obvious or known consequences of one's actions" also satisfies the willfulness standard. *Bedrosian*, 2017 WL 4946433, at *4 (quoting *McBride*, 908 F.Supp.2d at 1205).  In the FBAR context, the government can show willful blindness by evidence that the non-filer made a "conscious effort to avoid learning about reporting requirements." *United States v. Williams*, 489 Fed.Appx. 655, 659-60 (4th Cir. 2012). Evidence of conduct intended to "conceal or mislead sources of income or other financial information" is evidence of both willful blindness and recklessness. *Id.* at 660.

"An improper motive or bad purpose is not necessary to establish willfulness in the civil context." *McBride*, 908 F.Supp.2d at 1204 (internal citations omitted).  Moreover, direct evidence of intent is not required to establish a violation was willful - persons who fail to file an FBAR are not likely to admit they knew of the filing requirement and chose not to comply with it. *Id*. at 1205. Willfulness can be shown through circumstantial evidence and reasonable inferences drawn from the facts before the court. *Id*.

The *McBride* court counseled that evidence of improper motive or bad intent is not required to show willfulness.  Reckless disregard and willful blindness are sufficient to support the imposition of a willful FBAR penalty.   In the event that the Court finds that Dadurian did not intend to evade her legal obligation, there is ample undisputed evidence in the record to establish willfulness under both the reckless disregard and willful ignorance theories. *See McBride*, 908 F.Supp.2d at 1205 (constructive knowledge of reporting requirement is imputed to taxpayers who signed their federal tax returns); *Bedrosian*, 2017 WL 4946433, at *4 (willful blindness satisfies the standard and exists where one takes deliberate actions to avoid learning reporting requirements).  **II.  Reasonable Cause Is Not a Permissible Defense in a Willful FBAR Case**

The reasonable cause defense does not apply to a willful FBAR violation. In this regard, 31 U.S.C. § 5321(5)(C)(ii), which governs willful violations, expressly provides that the reasonable cause defense available under 31 U.S.C. § 5321(5)(B)(ii) "shall not apply." Rather, that defense is only available for non-willful violations. 31 U.S.C. § 5321(5)(C)(ii); *Bedrosian*, 2017 WL 4946433, at *3; *United States v. Markus*, 2018 WL 3435068, at *5 (D.N.J. July 17, 2018); *United States v. Cohen*, 2018 WL 6318837, at *1 (CD Cal. October 23, 2018).

### III.  Genuine Issues of Material Fact Preclude Entry of Summary Judgment

Daniela Dadurian's father, Aram Dadurian, was a German orthopedic surgeon who during his lifetime transferred approximately 2.5 million dollars to offshore entities whose only apparent purpose was to hide assets from potential creditors. Two of those entities, Shoremont Resources, Inc. ("Shoremont") and Stiftung Lionette ("Lionette"), are the nominal owners of foreign bank accounts located in the tax havens of Switzerland and British Virgin Islands that underlie the FBAR penalties assessed against Dadurian for years 2007 and 2008. A third offshore entity, Ayaba, Inc. ("Ayaba"), underlies additional FBAR penalties assessed against Daniela Dadurian for the years 2007 through 2010. Ayaba, was created in 2006 after Aram Dadurian's death. The only known activity of Ayaba, whose bank accounts are also located in offshore tax havens, was a purported "loan" in 2007 in the amount of $1.89 million to a business owned by Dadurian and used to purchase the office building in which she operates her medical practice. Dadurian did not apply for the loan, and neither she nor her business paid interest or principal on the "loan." The balance of Aram Dadurian's millions in offshore funds was transferred to Dadurian's personal Wells Fargo bank account at her direction after this action was commenced. Thus, Darurian and her medical practice are the only beneficiaries of the

foreign accounts that she claims to have known nothing about until the commencement of the examination of her tax returns by the IRS, and that she maintains were established to benefit her mother.

It is undisputed that Aram Dadurian died of lung cancer in 2001, and was aware that his condition was terminal prior to his death.  Despite that his only heirs were his wife Georgeta who suffers from Alzheimer's disease and his daughter Daniela with whom according to Dadurian's deposition testimony he had a close relationship, Daniela Dadurian claims, incredibly, that her father died without telling her of the existence of the millions her father held in foreign accounts nominally titled to offshore entities.  Rather, Dadurian claims that her father only told a friend named Janet Brookes in St. Kitts about the accounts and merely instructed his daughter to ask Brookes for a loan if she ever needed money.  Thus, according to Dadurian, her dying father made no provision to ensure the transfer of his millions to his wife who suffers from dementia and only child on his death, and these assets were unknown to her until the IRS examination uncovered the foreign accounts.  No admissible evidence exists to support a finding that that Brookes controlled the foreign accounts.  But there is evidence to show that Dadurian exercised control over the accounts and the entities in whose name the account were titled, and that the accounts were used for her benefit.  In this regard, Dadurian authorized transfers of funds between foreign accounts, executed an application in which she identified herself as the beneficiary of Lionette, and terminated Brookes from managing Dadurian's property and assets as she had done since Aram Dadurian's death.  Dadurian's version of events is inherently implausible, but the veracity of her account is necessarily an issue for the jury to consider at trial.

A trial of this matter is undoubted necessary due to the existence of genuine material facts in dispute that make granting summary judgment improper.

Daniela Dadurian makes two arguments in support of her motion for partial summary judgment. First, she claims that she did not know and had no reason to know of the foreign accounts titled in the name of Shoremont, Lionette, and Ayaba in 2007. Second, she claims that she relied on legal counsel to advise her of any legal obligations arising from the foreign accounts at Rahn & Bodmer and Sparkasse Bodensee that were titled in the name of Ayaba and her mother Georgeta Dadurian in 2010, and was advised that no FBAR was necessary.

As to the first argument, there is evidence that Daniela Dadurian was aware of the existence of the foreign accounts prior to 2007. In this regard, Daniela Dadurian's 2005 divorce decree provides that she is entitled to retain "all assets inherited from her father…. regardless of how said assets may be titled." (Facts ¶ 46.) Daniela testified at deposition that she did not inherit anything from her father that was titled in a name other than her father. (Facts ¶ 45.) It necessarily follows that the divorce decree refers to the only known assets owned by Aram Dadurian that were not titled in his name, namely the foreign bank accounts titled in the name of Shoremont and Lionette. That she also was aware or should have been aware of Ayaba's account is supported by the admission by her attorney during the IRS examination that Daniela authorized the transfer of funds from Shoremont to Ayaba after that entity was created in 2006 for the purpose of funding the $1.189 million dollar purchase in 2007 of the real property in which she operates her medical practice. (Facts ¶¶ 24 - 29). The admission that this transfer occurred with Dadurian acting in the capacity of power of attorney for her mother creates an

inference that she knew or should have known that she and her mother had an interest in or authority over both accounts.

Moreover, Dadurian wrote a letter to Brookes in March of 2009 in which she acknowledged Brookes for her "stewardship of my property and assets entrusted to you from the year 2001 when my father passed away." (Facts ¶ 48). This admission supports an inference that Daniela understood that Brookes was managing for Dadurian's benefit the foreign accounts established by her father during his lifetime.

Finally, there are numerous facts to create an inference that Dadurian acted with a guilty conscience with respect to the foreign accounts at issue. She falsely denied that she owned foreign property when she in fact did. (Facts ¶ 67). Additionally, Dadurian acted to conceal the offshore transfer of funds to her medical practice from her accountant by falsely stating to him that the source of the funds to purchase her medical office building was a loan from Seaside Bank – not from Ayaba as she later claimed. (Facts ¶¶ 31 - 32). Most notably, Dadurian failed to report the existence of her own foreign bank account and her mother's account that she controlled and used to pay her mother's bills – both accounts of which she was aware. (Facts ¶ 50 - 64). Nor did she report the income earned on either of these accounts. (Facts ¶ 82.) Dadurian's failure to report the foreign bank accounts of which she was undoubtedly aware, lies to the IRS during the examination, and efforts to conceal the true nature of the purported loan from Ayaba create an inference that she was aware of the foreign bank accounts all along and acted willfully to conceal this fact.

As to the second argument, even if the reasonable cause defense were not expressly barred in a willful case by statute, material facts are in dispute that render entry of summary

17618230.1

judgment impermissible. In this regard, there is evidence that Dadurian was advised by her accountant Anthony Caruso to file an FBAR for year 2010, but neglected to file the one he prepared and sent to her with instructions to file. Dadurian's accountant Tony Caruso testified at deposition that he was asked to determine whether an FBAR needed to be filed, prepared an FBAR for 2010 reporting both the Ayaba and Sparkassee Bodensee accounts, and mailed it to Dadurian on June 28, 2011 in advance of the due date. (Facts ¶¶ 78 - 80). It necessarily follows that Dadurian knew or should have known that she was required to file a report for 2010. Moreover, Dadurian's bald statement that she provided her attorneys with sufficient information to determine whether an FBAR was required is insufficient to support a reasonable cause defense. In the absence of evidence of the specific information Dadurian claims to have given her advisors, there is no basis to conclude that she provided them with sufficient information to render a valid opinion. Nor is there any evidence of the advice given by the advisors other than hearsay. In the absence of competent evidence as to the information given and the advice rendered, there is no basis to support a finding that the non-filing of the 2010 FBAR was due to reasonable cause.

Finally, there is affirmative evidence that Dadurian was aware of her duty to file FBARS prior to the years at issue. It is undisputed that Dadurian filed FBARS reporting foreign accounts in 1993 and 1996. (Facts ¶ 49.) Dadurian's history of filing FBARS creates an inference that she knew or should have known of her obligation to do so in 2010 as well. Because evidence exists that Dadurian filed FBARS in prior years and was advised shortly before the deadline that an FBAR was required for 2010, a genuine issue of material fact existences as to whether

Dadurian exercised the ordinary care and prudence necessary to sustain a finding that her failure to file the FBAR for that year was due to reasonable cause.

## CONCLUSION

The United States has introduced substantial admissible evidence that Dadurian's failure to report her interest in and authority over foreign financial accounts was willful. All inferences from this evidence must be viewed in the light most favorable to the government. When viewed it that light, it is evident that a reasonable jury could find at a minimum that Dadurian acted with reckless disregard and/or willful indifference of her reporting obligations. Because genuine disputes of material fact exist, defendant's motion for summary judgment must be denied.

Dated: May 31, 2019

                                              RICHARD E. ZUCKERMAN
                                              Principal Deputy Assistant Attorney General

                          By:    /s/ Mary Apostolakos Hervey
                                Mary Apostolakos Hervey
                                John P. Nasta, Jr.
                                Fla. Bar #1004432 (Nasta)
                                Trial Attorneys, Tax Division
                                U.S. Department of Justice
                                P.O. Box 14198
                                Ben Franklin Station
                                Washington, D.C. 20044
                                Telephone: (202) 514-6484 (Hervey)
                                Telephone:  (202) 307-6560 (Nasta)
                                Facsimile: (202) 514-9868
                                Mary.Apostolakos.Hervey@usdoj.gov
                                John.Nasta@usdoj.gov>

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Opposition to Motion for Summary Judgment has been filed this 31st day of May, 2019 with the Court via ECF, which will transmit an electronic copy to all counsel of record.

/s/ Mary Apostolakos Hervey
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198, Ben Franklin Station
Washington, DC 20044