UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-81276-ROSENBERG/REINHART

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIELA DADURIAN,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on the Defendant's Motion for Partial Summary Judgment [DE 26]. The Court has carefully considered the Motion, the Plaintiff's Response in opposition thereto [DE 30], the Defendant's Reply [DE 38], and the record, and is otherwise fully advised in the premises. For the reasons set forth below, the Defendant's Motion for Partial Summary Judgment [DE 26] is **DENIED**.

**I.    BACKGROUND**

The Plaintiff has brought this action to collect civil penalties under 31 U.S.C. § 5321. DE 1. The Plaintiff alleges that the Defendant had a financial interest in, or signature or other authority over, several foreign financial accounts during tax years 2007 through 2010. The Plaintiff further alleges that the Defendant was required to report these financial accounts on a Report of Foreign Bank and Financial Accounts (referred to as a "FBAR") for each tax year and that she willfully failed to do so in a timely manner. Thus, the Plaintiff contends that the Defendant owes $2,713,692.33 in penalties and interest and seeks judgment in that amount.

The Defendant now moves for partial summary judgment, seeking a judgment that she is not liable for penalties for her failure to report certain financial accounts for certain years. DE 26.

Specifically, the Defendant argues that there is no evidence that she willfully failed to report the following accounts: (1) three accounts held by entities known as Ayaba, Shoremont, and Stiftung Lionette at VP Bank during tax year 2007; and (2) an account held by Ayaba at Rahn & Bodmer Bank and an account held by the Defendant's mother, Georgeta Dadurian, at Sparkassee Bodensee Bank during tax year 2010. The Defendant does not seek summary judgment as to the following accounts that are also at issue in this proceeding: (1) an account held by the Defendant at Frankfurter Bank and the account held by the Defendant's mother at Sparkassee Bodensee Bank during tax year 2007; (2) two accounts held by Ayaba and Stiftung Lionette at VP Bank and the account held by the Defendant's mother at Sparkassee Bodensee Bank during tax year 2008; and (3) two accounts held by Ayaba at Rahn & Bodmer Bank and VP Bank and the account held by the Defendant's mother at Sparkassee Bodensee Bank during tax year 2009. The Defendant supports her Motion for Summary Judgment with her own affidavit and her deposition testimony. *See* DE 26-2 and -3.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).

"A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). When deciding a summary judgment motion, a court views the evidence in the light most favorable

to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016); *see also Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1278 (11th Cir. 2017) (stating that, if "reasonable minds might differ on the inferences arising from undisputed facts, then the district court should deny summary judgment" (quotation marks omitted)). The court may not weigh conflicting evidence or make credibility determinations. *Furcron*, 843 F.3d at 1304.

## III. ANALYSIS

A resident or citizen of the United States having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign county must report that relationship for each year that the relationship exists by filing a FBAR by June 30 of the following year. *See* 31 U.S.C. § 5314(a); 31 C.F.R. §§ 1010.306(c), 1010.350(a). Failure to do so subjects the resident or citizen to a civil penalty. *See* 31 U.S.C. § 5321(a)(5)(A), (B). That penalty is greater if the failure to report is willful. *See id.* § 5321(a)(5)(C).

A party's state of mind generally is a question of fact for the trier of fact to determine at trial. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991); *see also United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012) ("Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact.").

The relevant statutes and regulations do not define willful. "'[W]illfully' is a word of many meanings whose construction is often dependent on the context in which it appears." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) (quotation marks omitted). "[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id.* (stating that such a construction "reflects common law usage, which treated actions in 'reckless disregard' of the law as 'willful'

3

violations"); *see also id.* at 57 n.9 (distinguishing the use of the word "willful" in the criminal context, where it is "regularly read . . . as limiting liability to knowing violations"). Recklessness in the civil context is an objective standard that entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (quotation marks omitted).

Thus, in civil cases involving FBAR reporting violations, several courts have defined the willfulness requirement to include both knowing and reckless violations. *See United States v. Brandt*, No. 17-80671-CIV, 2018 WL 1121466, at *4 (S.D. Fla. Jan. 24, 2018) (stating, on review of a default motion in a FBAR case, that "[w]illfulness does not require actual knowledge of the duty to report interest in a foreign financial account, but merely reckless or careless disregard of that statutory duty"); *see also Williams*, 489 F. App'x at 658; *United States v. Garrity*, 304 F. Supp. 3d 267, 273-74 (D. Conn. 2018); *United States v. McBride*, 908 F. Supp. 2d 1186, 1204-05 (D. Utah 2012).

The Defendant contends that a willful FBAR reporting violation requires a showing of a "known legal duty rather than mere recklessness." DE 26 at 12. In a criminal case involving FBAR reporting violations, the Sixth Circuit stated that "the test for statutory willfulness is voluntary, intentional violation of a known legal duty." *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991) (quotation marks omitted). As already discussed, the Supreme Court has distinguished the definitions of willful in the civil and criminal contexts. *See Safeco Ins. Co.*, 551 U.S. at 57 n.9. Moreover, the *Sturman* court also stated that willfulness may be inferred "from a conscious effort to avoid learning about reporting requirements" or "from conduct meant to conceal or mislead sources of income or other financial information." 951 F.2d at 1476; *see also Williams*, 489 F. App'x at 658 (stating that "'willful blindness' may be inferred where a defendant

4

was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided leaning the facts point[ing] to such liability" (quotation marks omitted)).

Ultimately, regardless of whether this Court uses recklessness, willful blindness, or even knowingly to define willfulness in this case, there is circumstantial evidence by which a trier of fact could reasonably infer that the Defendant willfully failed to file FBARs for the five accounts at issue on summary judgment. *See United States v. Zwerner*, No. 13-22082-CIV, 2014 WL 11878430, at *3 (S.D. Fla. Apr. 29, 2014) (addressing, in a civil case for FBAR reporting violations, the caselaw providing differing definitions of willful, but concluding that "[u]nder either intent standard, genuine issues of material fact remain in dispute" that preclude summary judgment).

The Defendant filed individual tax returns for tax years 2007 through 2010 using Form 1040; Schedule B to Form 1040 notifies a taxpayer of the requirement of a FBAR if the taxpayer has an interest in, or signature or other authority over, a financial account in a foreign country. DE 34-16 through -19; *see Williams*, 489 F. App'x at 659 (stating that a taxpayer is charged with constructive knowledge of the contents of a tax return that he signs). The Defendant testified that she reviewed her tax returns before signing them. DE 34-2 at 33.

A. **Ayaba and Shoremont accounts for 2007**

The Plaintiff has presented evidence that, as to the VP Bank accounts held by entities known as Ayaba and Shoremont during tax year 2007, Ayaba had bank accounts in the British Virgin Islands and Switzerland and Shoremont had bank accounts in Liechtenstein and the British Virgin Islands. DE 34-1 at 3. Ayaba was funded by a transfer of assets from Shoremont, and the Defendant directed that transfer. DE 34-2 at 54; DE 34-3 at 2. In 2007, over one million dollars from Ayaba was used for the Defendant's business, Second Youth Investment Company ("Second

5

Youth"), to purchase commercial condominium units out of which the Defendant would operate a medical practice. DE 34-2 at 38, 54, 56; DE 34-3 at 2-3. No lender or loan information was disclosed on the HUD closing documents for the condominium units. DE 34-2 at 58-59; DE 34-27.

In September 2007, the Defendant, as authorized agent for Second Youth, executed a promissory note to repay Ayaba the funds used to purchase the condominium units, with an interest rate of 6% per annum. DE 34-2 at 58; DE 34-3 at 3; DE 34-25. There is no loan application or collateral for this loan, and no principal or interest was ever paid on the loan. DE 34-2 at 56, 58. A tax law specialist with the Internal Revenue Service later learned that "Ayaba was merely a nominee for foreign bank accounts belonging to" the Defendant or her mother and that "Ayaba was not permitted to make loans under the laws of Liechtenstein." DE 34-29 at 1-2.

The Defendant testified that the funds to purchase the condominium units came from a friend. DE 34-2 at 57, 59. Meanwhile, Anthony Caruso, a certified public accountant, testified that he prepared Second Youth's 2007 tax return and was led to believe that the funds to purchase the condominium units came from a loan from Seaside Bank. DE 34-11 at 2, 13-15. Second Youth's books and ledgers recorded that the loan was from Seaside Bank. *Id.* at 14-15.

The circumstances of the purchase of the condominium units, including the varying accounts regarding the purchase, could lead a reasonable trier of fact to conclude that the Defendant was aware that she had a financial interest in, or signature or other authority over, the Ayaba and Shoremont accounts and that she willfully failed to disclose those accounts on a FBAR for tax year 2007. Thus, there is a genuine issue for trial as to whether the Defendant may be penalized for her failure to report those two accounts.

### B. Stiftung Lionette account for 2007

The Plaintiff has also presented evidence that, as to the VP Bank account held by Stiftung Lionette during tax year 2007, the Defendant's father, Aram Dadurian, established Liechtenstein foundation Stiftung Lionette, which had bank accounts in Liechtenstein and the British Virgin Islands. DE 34-1 at 3; DE 34-2 at 14. The Defendant's father passed away in 2001. DE 34-1 at 3. The Defendant avers that she had no knowledge of Stiftung Lionette prior to 2010. DE 26-2 at 2; DE 34-2 at 14.

However, in November 2008, the Defendant signed an application form as "founder/donor/curator/protector" of Stiftung Lionette to have a Zurich corporation "take over" Stiftung Lionette. DE 34-2 at 49-51; DE 34-30. The application stated that Stiftung Lionette's assets included a bank account and safety deposit box at VP Bank and that the source of those assets were "[f]amily wealth and business proceeds father." DE 34-2 at 50; DE 34-30.

From this evidence, a reasonable trier of fact could conclude that in June 2008, the deadline to file a 2007 FBAR and only five months before she signed the application form, the Defendant was aware that she had a financial interest in, or signature or other authority over, the Stiftung Lionette account and that she willfully failed to disclose the account on a FBAR for tax year 2007. Accordingly, there is a genuine issue for trial as to whether the Defendant may be penalized for failure to report this account.

### C. Ayaba and Georgeta Dadurian accounts for 2010

Finally, the Plaintiff has presented evidence that, as to the Rahn & Bodmer Bank account held by Ayaba and the Sparkassee Bodensee Bank account held by the Defendant's mother during tax year 2010, Ayaba had bank accounts in the British Virgin Islands and Switzerland and the Sparkassee Bodensee account was in Germany. DE 34-1 at 3; DE 34-2 at 15, 32-33. There is a

genuine issue of fact as to whether the Defendant willfully failed to report the Ayaba account for tax year 2007. That account was transferred from VP Bank to Rahn & Bodmer Bank in 2008 and is the same account at issue for tax year 2010. DE 34-3 at 3.

The Defendant served as her mother's power of attorney beginning in either 2003 or 2004. DE 34-2 at 20; DE 34-3 at 2; DE 34-24. The Defendant was aware of the Sparkassee Bodensee account as of 2007, and she withdrew money from the account to pay her mother's living expenses from 2007 to 2010. DE 34-2 at 32-33. Caruso prepared a FBAR for the Defendant's mother for tax year 2010 that listed the Sparkassee Bodensee account; he sent the FBAR to the Defendant with instructions to mail it to the Internal Revenue Service. DE 34-11 at 19-20, 43-44.

The Defendant contends that she did not willfully fail to report the Ayaba and Sparkassee Bodensee Bank accounts for 2010 because she relied on the advice of tax attorneys that she was not required to disclose those accounts on a 2010 FBAR. DE 26 at 15-17; DE 38 at 8-11; s*ee* DE 26-2 at 3-4. The Defendant relies on one case involving FBAR violations—*United States v. Flume*—to support her assertion that "reliance upon counsel is a defense to a willful FBAR penalty because it negates the element of willfulness." DE 38 at 8. In *Flume*, however, the court determined that the defendant's purported reliance on the advice of his tax-return preparer that he did not need to file a FBAR created a genuine issue of fact as to the defendant's willfulness, precluding a grant of the government's summary judgment motion. *See* No. 5:16-CV-73, 2018 WL 4378161, at *2, 6, 9 (S.D. Tex. Aug. 22, 2018). The *Flume* court also indicated that there was a genuine issue as to whether the defendant gave his tax-return preparer adequate information from which to accurately determine whether a FBAR was required. *Id.* at *2, 6. The *Flume* court did not rule that the defendant's reliance negated willfulness; furthermore, a ruling by a Texas district court is not binding on this Court. Lastly, while reliance on professional tax advice may

8

demonstrate reasonable cause for underpayment of a tax liability, *see* 26 C.F.R. § 1.6664-4, reasonable cause is not a defense to a willful FBAR reporting violation, *see* 31 U.S.C. § 5321(a)(5)(B)(ii), (C)(ii).

A reasonable trier of fact could conclude that the Defendant was aware that she had a financial interest in, or signature or other authority over, the Ayaba and Sparkassee Bodensee accounts and that she willfully failed to disclose those accounts on a FBAR for tax year 2010. As such, there is a genuine issue for trial as to whether the Defendant may be penalized for failure to report those two accounts.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Partial Summary Judgment [DE 26] is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 24th day of June, 2019.

/s/ Robin L. Rosenberg
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record

9